UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **Project Honey Pot**, a dba of Unspam Technologies, Inc., <br> Plaintiff, <br><br> v. <br><br> **John Does**, <br> Defendants. | No. 1:07CV419 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO EXTEND TIME TO CONDUCT DISCOVERY NECESSARY TO IDENTIFY AND SERVE DEFENDANTS, AND TO EXTEND RULE 4(M) DEADLINE TO NAME AND SERVE DEFENDANTS**

By this motion, Plaintiff Project Honey Pot ("PHP") respectfully requests an order extending time to conduct limited discovery necessary to identify and serve the John Doe defendants, and to extend the deadline under Rule 4(m) to name and serve the John Doe defendants.

**FACTUAL BACKGROUND**

As noted in the Complaint, spam is a global problem of epidemic proportions, and the volumes continue to rise at an alarming rate. When this lawsuit was filed in late April 2007, PHP had received "only" 6 million spam messages over the first 28 months of operations (an average of 217 thousand spam messages per month). In the four months immediately following the filing of this lawsuit, PHP received an average of nearly 1 million new spam messages each month. PHP is now receiving well over 1 million spam messages *every four days*. Much of that spam advertises illegal online pharmacies that are the focus of this lawsuit. Our analysis of this

spam continues to indicate the vast majority of the problem can be traced to fewer than two dozen professional cyber-gangs.[1]  Our discovery is also generally consistent with the limited facts that have been publicly disclosed by others who are researching this illegal conduct.[2]

Despite their best efforts to hide, PHP believes every one of the professional gangs remains vulnerable to discovery and exposure through civil legal process.  A number of domestic corporations are unwittingly providing "essential services" to the criminal gangs.  To name just a few enabling services, every one of the gangs being tracked in this lawsuit has access to the following essential services:

- credit card merchant accounts they are using to charge consumer credit cards,
- toll free telephone numbers they advertise as customer service centers, and
- Internet-based accounts (domain names, webhosting services, email accounts, etc.) that produce innumerable data points that are controlled by domestic-based corporate entities.

In recent weeks, PHP has successfully pursued several of these domestic discovery fronts against a number of the largest cyber-gangs.  For example, PHP only recently obtained payment information from an email service provider that was providing email service to one of the John Does.  This John Doe was using the provider to distribute confirmation emails to buyers.  The payment information provided indicates the John Doe paid for this email account using two debit cards issued by domestic financial institutions.  PHP has initiated informal

---

[1] In its previous motion to extend discovery, PHP briefly outlined the technical details that defined its view of the scope of the pharmacy spam problem and its counsel's success in connecting nearly 90% of the problem to less than two dozen criminal cyber-gang "fingerprints."  See Memorandum in Support of Motion to Extend John Doe Discovery, filed August 30, 2007.

[2] *Internet Fraud Epidemic Costing Billions of Dollars*, The Mercury News, November 9, 2007(available at http://www.siliconvalley.com/ghostsinthebrowser/ci_7408419?nclick_check=1);
*The Hunt for Russia's Web Criminals*, The Guardian, November 7, 2007 (available at http://www.guardian.co.uk/technology/2007/nov/15/news.crime?gusrc=rss&feed=technology);
*Shadowy Russian Firm Seen as Conduit for Cybercrime*, Washingtonpost.com, October 13, 2007 (available at http://www.washingtonpost.com/wp-dyn/content/article/2007/10/12/AR2007101202461.html); and
*A Walk on the Dark Side*, The Economist, August 30, 2007 (available at http://economist.com/displaystory.cfm?story_id=9723768).

contacts with these banks, but has not had the opportunity to issue subpoenas. An extension of the discovery window is needed to permit PHP to subpoena these banks.

While we have learned much about the individuals responsible for the advertising of illegal online pharmacies, our discovery continues to encounter roadblocks and the new spam we are analyzing constantly produces leads that point in helpful, new directions. Additional time is needed to overcome these roadblocks and to pursue these new discovery paths.

For all these reasons, PHP respectfully requests it be granted a two month extension – to January 28, 2008 – to continue John Doe discovery and to name and serve defendants.

## LEGAL ARGUMENT

Courts recognize that, in certain situations, the identity of a defendant may not be known prior to the filing of a complaint. In such circumstances, courts authorize a plaintiff to undertake discovery to identify the unknown defendant. In Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978), the Fourth Circuit explained that, if a plaintiff states a meritorious claim against an unknown defendant, the Court should allow the plaintiff a "reasonable opportunity" to ascertain the identity of the unknown defendant through discovery. Paulinus Chidi Njoku v. Unknown Special Unit Staff, No. 99-7644, 2000 U.S. App. LEXIS 15695, at *2-3 (4th Cir. July 7, 2000) (remanding the case with instructions to afford plaintiff a "reasonable opportunity to properly identify" the John Does). This power is codified in Rule 26(d), which permits the Court to authorize discovery prior to the planning conference contemplated under Rule 26(f).

In addition to authorizing discovery necessary to identify and serve the John Doe defendants, PHP is also seeking an extension of its deadline to name and serve defendants under Rule 4(m). Federal Rule of Civil Procedure 4(m) provides that a plaintiff who shows good cause

for failure to effectuate service within 120 days of filing the complaint is entitled to an appropriate extension of time to serve. Courts have held that good cause exists – and that a plaintiff is entitled to additional time to effect service – when defendants take affirmative actions to avoid service of process. For example, in Ruiz-Varela v. Velez, the District Court dismissed the plaintiff's Complaint pursuant to Rule 4(m) for failure to serve Defendant Figueroa. 814 F.2d 821 (1st Cir. 1987). Recognizing that Figueroa was attempting to evade personal service by concealing his whereabouts, the First Circuit vacated the dismissal. Because Figueroa's attempts to conceal his location were designed to frustrate the plaintiff's ability to effectuate service, the Court of Appeals explained that dismissal for failure to serve was inappropriate: "Evasion of service by a putative defendant constitutes good cause for failure to serve under Rule 4[m]." Id. at 824. As noted above, the defendants in this case have gone to extreme measures to evade identification and service. Their attempts at evasion are an adequate basis for extending PHP's deadline to name and serve.

This Court should also grant PHP an extension of time to identify and serve the John Does due to its diligence in prosecuting this matter. Courts have consistently held that "a showing of diligence and a reasonable effort to effect service" constitute good cause under Federal Rule of Civil Procedure 4(m). In re Hall, 222 B.R. 275, 279 (Bankr. E.D. Va. 1998) (citing T & S Rentals v. United States, 164 F.R.D. 422, 426 (N.D. W.Va. 1996) and United States v. Britt, 170 F.R.D. 8, 10 (D. Md. 1996). In determining the type of diligence or extent of effort required to warrant an extension of the 120-day deadline, courts have examined the legislative history of amendments to Rule 4, noting that: "Inadvertent or heedless non-service is what amended Rule 4[m] is aimed at. Congress intended that a plaintiff who had made reasonable efforts to effect service would be permitted additional time, if needed, under Rule

4

6(b)." <u>Arroyo v. Wheat</u>, 102 F.R.D. 516, 518 (D. Nev. 1984) (citing to cases in which "there was no dilatory or willful delay" and in which "plaintiff's abortive efforts [were] bona fide," as illustrative of situations in which "good cause" was determined to exist); see also <u>Quann v. Whitegate-Edgewater</u>, 112 F.R.D. 649, 659 (D. Md. 1986) (citing <u>Arroyo v. Wheat</u>).

PHP has subpoenaed dozens of third parties in possession of information likely to lead to the identity of the John Doe defendants. This information has provided valuable leads into the identity of the defendants. PHP plans to continue its John Doe discovery, and also plans to continue to communicate with other victims of these John Does in an effort to ensure its discovery does not inadvertently compromise other pending civil and criminal investigations. All of these reasons constitute good cause for an extension of the deadline to name and serve the John Doe Defendants.

**WHEREFORE**, for the foregoing reasons and any additional reasons that may be adduced on this matter, PHP respectfully asks the Court to grant this Request and enter an Order substantially in the form of the attached proposed Order.

Dated: November 26, 2007                                    Respectfully submitted,

/s/
_____

Jon L. Praed
VSB #40678
Attorney for Plaintiff Project Honey Pot
Internet Law Group
4121 Wilson Boulevard, Suite 101
Arlington, Virginia 22203
Phone: (703) 243-8100
Fax: (703) 243-8162
jon.praed@i-lawgroup.com

5